William R. DURANT, Petitioner, Appellant,

v.

UNITED STATES of America, Respondent, Appellee.

No. 7234.

United States Court of Appeals First Circuit.

May 6, 1969.

As Amended May 9, 1969.

David H. Lamson, Boston, Mass., by appointment of the Court, for appellant.

Robert D. Canty, Asst. U. S. Atty., with whom Paul F. Markham, U. S. Atty., was on brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

McENTEE, Circuit Judge.

Defendant was indicted on four counts of narcotics violations—two counts charging violations of 26 U.S.C. § 4705 (a) and two charging violations of 21 U.S.C. § 174.[1] By statute, persons convicted and sentenced for these violations are not eligible for parole. 26 U.S.C. § 7237(d). On February 12, 1968, the defendant appeared for arraignment without counsel and the district court ordered pleas of not guilty entered in his behalf. Also, at defendant's request, an attorney of his own choice was appointed to represent him. On April 29, 1968, the defendant accompanied by his court appointed attorney, appeared before the district court and requested leave to plead guilty to all four counts. The court made diligent inquiry as to defendant's understanding of the nature of the charges against him and as to the voluntariness of the plea. Also, defendant was advised as to the minimum and maximum sentences that could be imposed.[2] But no mention was made by the court or anyone else as to the defendant's ineligibility for parole on any sentence imposed. On the basis of this inquiry the defendant's pleas of guilty were accepted and thereafter the court sentenced him to concurrent five year terms on each count. Some four months later the defendant, acting pro se, filed the instant § 2255 motion to vacate sentence and alternatively

---

1. Generally speaking 26 U.S.C. § 4705(a) makes it unlawful for any person to sell narcotic drugs except upon written order issued by the proper federal officer and 21 U.S.C. § 174 deals, among other things, with the unlawful possession of narcotic drugs.

2. The Court. "What is the maximum penalty?"

Mr. Cullen (Assistant United States Attorney). "Not less than five nor more than 20 years. In addition he may be fined not more than $20,000."

The Court. "Did you hear Mr. Cullen say what the maximum was?"

The defendant. "Yes, I did."

Also, in the course of the interrogation the defendant admitted that he had possessed narcotics and had sold them without an order form, as charged. This was corroborated by the narcotics agent's report.

a motion to withdraw his guilty pleas under Fed.R.Crim.P. 32(d). He complains, among other things, that when he pleaded guilty he did not know that he would be ineligible for parole on any sentence imposed; that in fact he was advised by his attorney that parole would be available to him and that had he known that it was not he would not have pleaded guilty. These motions were denied without a hearing,[3] as were defendant's motions for rehearing.

Fed.R.Crim.P. 11, as amended effective July 1, 1966, provides in pertinent part:

"The court may refuse to accept a plea of guilty, and shall not accept such plea * * * *without first addressing the defendant personally* and determining that the plea is made voluntarily with understanding of the nature of the charge *and the consequences of the plea.*" (Italics ours).

The narrow issue presented by this appeal is whether ineligibility for parole is a consequence of defendant's guilty plea about which the district court must address the defendant personally before accepting the plea.[4] Rule 11 lays down no specific tests or standards by which the consequences of a plea of guilty may be ascertained or determined and there is a difference of opinion among the circuits on the resolution of this issue. Compare Munich v. United States, 337 F.2d 356 (9th Cir. 1964) with Trujil-

lo v. United States, 377 F.2d 266 (5th Cir.), cert. denied, 389 U.S. 899, 88 S.Ct. 224, 19 L.Ed.2d 221 (1967) and Smith v. United States, 116 U.S.App.D.C. 404, 324 F.2d 436, cert. denied, 376 U.S. 957, 84 S.Ct. 978, 11 L.Ed.2d 975 (1963). Relying principally on *Trujillo* and *Smith* the government takes the position that parole is merely a matter of legislative grace which may be administratively granted or withheld and therefore not within the ambit of Rule 11. The short answer to this is that it fails to distinguish between availability and eligibility for parole. It may be "legislative grace" for Congress to provide for parole but when it expressly removes all hope of parole upon conviction and sentence for certain offences, in our opinion this is in the nature of an additional penalty.

Next, the government advances the argument made in *Smith* that the defendant pleaded guilty knowing that he could be sentenced to a maximum of eighty years on the four counts of the indictment; that the effect of parole, even if available on this maximum sentence, would have been far in excess of the five year sentence actually imposed. Inexplicably the government fails to develop this argument. If its intention is to show lack of prejudice we reject it. Under Rule 11 the defendant is entitled to know the consequences of his plea *before* entering it.[5] This mandate is not nor can it be satisfied by hindsight reasoning comparing the actual sentence

---

3. The district court held that in view of the fact that the defendant had able counsel there was no duty upon the district court to act in any manner differently than it did. It is noted that these motions came before a different district judge than the one who accepted defendant's plea of guilty and sentenced him.

4. The importance of a plea of guilty must not be underestimated. As stated in Machibroda v. United States, 368 U.S. 487, 493, 82 S.Ct. 510, 513, 7 L.Ed.2d 473 (1961) quoting Kercheval v. United States, 274 U.S. 220, 223, 47 S.Ct. 582, 71 L.Ed. 1009 (1927), "A plea of guilty

differs in purpose and effect from a mere admission or an extra-judicial confession; it is itself a conviction. Like a verdict of a jury it is conclusive. More is not required; the court has nothing to do but give judgment and sentence. Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences."

5. We do not mean, of course, that a defendant is entitled to know what sentence he will receive before pleading to the charge.

with what it could have been.[6] The language of the rule is clearly designed to enable a defendant to assess the risk that he is taking by entering a plea of guilty.[7]

Nor can we accept the argument made in *Trujillo* that ineligibility for parole is a contingency too remote to be a significant consequence of a plea of guilty. In that case the court attempted to illustrate this point by observing that such matters as loss of passport, deportation, loss of voting privileges and undesirable discharge from the armed services, all of which may result from a plea of guilty, have been determined not to be "consequences of the plea" within the scope of Rule 11. We merely comment that these are collateral consequences, civil in nature, while parole goes directly to the length of time a defendant is to be incarcerated.[8]

In *Munich, supra* 337 F.2d at 361, the court stated: "In our opinion one who, at the time of entering a plea of guilty, is not aware of the fact that he will not be eligible for probation or parole, does not plead with understanding of the consequences of such a plea." We think this is the better view. The nature of parole is well understood, and its availability may be regarded as assumed by the average defendant. Just as the "depressive effect" of a detainer casts a legally cognizable shadow, Smith v.

Hooey, 393 U.S. 374, 379, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969), the removal of hope due to the loss of all opportunity to earn "good time" is a substantial deprivation, effecting a fundamental variation in sentence beyond mere calendar years. We do not suggest that a defendant need be given a detail of every consequence of his sentence, but the loss of something important enough to make a deprivation after sentence constitutionally impermissible, *cf.* Greenfield v. Scafati, 277 F. Supp. 644 (D.Mass.1967), aff'd, 390 U.S. 713, 88 S.Ct. 1409, 20 L.Ed.2d 250 (1968), is a matter of which a defendant should be informed in advance.

Here the defendant would be required to serve five years when he expected that with parole he might be free after serving some twenty months. This increase in imprisonment is far from inconsequential. Where a defendant pleads on the false expectation that he will be eligible for parole, in our opinion the policy of Rule 11 is not effectuated. Smith v. United States, 400 F.2d 860 (6th Cir. 1968).

The government in its brief seeks to make much of the fact that this defendant was represented by competent counsel when he changed his plea. The presence of counsel, however, does not relieve the court of its responsibility of inquiry under Fed.R.Crim.P. 11. Fultz v.

6. The opposite conclusion is reached in United States v. Caruso, 280 F.Supp. 371 (S.D.N.Y.1967), aff'd sub nom. United States v. Mauro, 399 F.2d 158 (2d Cir. 1968), cert. denied, 394 U.S. 904, 89 S.Ct. 1010, 22 L.Ed.2d 215 (Mar. 11, 1969) (alternative holding); Berry v. United States, 286 F.Supp. 816 (E.D.Pa.1968).

7. This principle has been implemented to the extent of insuring that a defendant is aware of the possible maximum sentence that might be imposed. Combs v. United States, 391 F.2d 1017 (9th Cir. 1968); Harper v. United States, 368 F.2d 53, 56 n. 2 (10th Cir. 1966); Pilkington v. United States, 315 F.2d 204 (4th Cir. 1964); Sims v. United States, 272 F. Supp. 577, 592 (D.Md.1966), aff'd 382 F.2d 294 (4th Cir. 1967), cert. denied, 390 U.S. 961, 88 S.Ct. 1062, 19 L.Ed.2d 1158 (1968).

8. The government states that in his application to withdraw his plea under Fed.R. Crim.P. 32(d) defendant should at the very least allege that he is not guilty of the charge to which he pleaded and emphasizes the fact that here the defendant readily admitted his guilt. There is authority for the proposition that an allegation of innocence must accompany a claim under Rule 32(d). Zaffarano v. United States, 330 F.2d 114 (9th Cir.), cert. denied, 379 U.S. 825, 85 S.Ct. 52, 13 L.Ed. 2d 35 (1964); Watts v. United States, 107 U.S.App.D.C. 367, 278 F.2d 247 (1960); Klingstein v. United States, 217 F.2d 711 (4th Cir. 1954); United States v. Norstrand Corp., 168 F.2d 481 (2d Cir. 1948); see Kinney v. United States, 391 F.2d 901 (1st Cir. 1968). But here we dispose of the case on the district court's noncompliance with Fed.R.Crim.P. 11 and do not reach the question of manifest injustice under Rule 32(d).

United States, 365 F.2d 404, 408 (6th Cir. 1966); United States v. Diggs, 304 F.2d 929, 930 (6th Cir. 1962) (cases cited); United States v. Lester, 247 F.2d 496, 500 (2d Cir. 1957).

We hold that ineligibility for parole is a consequence of a plea of guilty and under Rule 11 the district court should not have accepted the guilty plea without first informing the defendant that conviction upon the plea would make him ineligible for parole.

This brings us to the question of the relief to which this defendant is entitled. Had the sentencing occurred after April 2, 1969, he would have been entitled to plead anew. McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (April 2, 1969). That decision, however, is not retrospective. Halliday v. United States, 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16 (May 5, 1969). Accordingly, the procedure followed as to Halliday, Halliday v. United States, 380 F.2d 270 (1st Cir. 1967) viz., a hearing before another judge to determine whether his plea was in fact voluntarily made even though the court had not informed him as to the unavailability of parole, should be adopted. The burden as to voluntariness is, of course, upon the government.

Reversed and remanded to the district court for proceedings consistent with this opinion.